IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY BOWENS, JR., INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF GARY BOWENS, SR., DECEASED, | § § § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:24-cv-178-BN |
| SWEEPING CORPORATION OF AMERICA, LLC and MICHAEL TINNELL, | § § § § | |
| Defendants. | § § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Sweeping Corporation of America, LLC removed this case to this Court, asserting that "this is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 and is one that may be removed to this Court based on diversity of citizenship in accordance with 28 U.S.C. §§ 1441 and 1446." Dkt. No. 1 at 5; Dkt. No. 10 at 5. And "SCA contends that Defendant [Michael] Tinnell is improperly joined to this action and requests that the Court disregard Tinnell's citizenship for the purposes of determining citizenship of the parties and its jurisdiction based on diversity." Dkt. No. 1 at 5; Dkt. No. 10 at 5.

Plaintiff Gary Bowens, Jr., Individually and as Representative of the Estate of Gary Bowens Sr., Deceased ("Bowens"), has filed a motion to remand the case to state court on the grounds that (1) this case is nonremovable under 28 U.S.C. §

1445(c) because his claim for gross negligence is brought under § 408.001(b) of the Texas Workers' Compensation Act (the "TWCA") and (2) this Court lacks subject matter jurisdiction of this action because Bowens's and Tinnell's Texas citizenship eliminates complete diversity and SCA's claim of improper joinder does not apply in this case. *See* Dkt. No. 13.

Bowens also requests that the Court require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal under 28 U.S.C. § 1447(c). *See id.* at 10.

SCA filed a response. *See* Dkt. No. 16. Bowens did not file a reply.

The Court determines that SCA has not established improper joinder and that this case must be remanded.

## Background

Through Plaintiff's Original Petition and Request for Disclosure, Bowens sued SCA and Tinnell in Texas state court, alleging that Tinnell "is an individual who serves as an Operations Support Manager at SCA and is designated as its agent to be responsible for the management and safety of the employees at SCA." Dkt. No. 1-5 at 3-4 of 8.

Bowens alleged that his

claims arise out of a motor vehicle accident that occurred on June 1, 2023, on President George Bush Turnpike and the Belt Line Road exit area in the City of Irving, Dallas County, Texas.

On the morning of June 1, 2023, Gary Bowens, Sr., deceased, was an employee of SCA, and was operating a street sweeping vehicle owned by Defendant, SCA. During Gary Bowens, Sr.'s operation of said vehicle, the vehicle was traveling southwest on President George Bush

-2-

Turnpike in Lane 4 approaching the exit ramp for Belt Line Road. The vehicle entered the apex for the Belt Line Road exit, drove over a guardrail, struck an exit sign, entered the exit ramp to Belt Line Road, struck a curb, and rolled approximately one time to the left and came to rest upside down in the right grassy median on top of a fence. As a result of the accident, Gary Bowens, Sr. sustained fatal injuries and was declared deceased at the scene.

Plaintiff will show that Defendants, SCA and MIKE TINNELL had ample and sufficient knowledge of the risks associated with Gary Bowens, Sr.'s operation of the vehicle that led to Gary Bowens, Sr.'s death and was advised by employees that Gary Bowens, Sr. should not have been operating the street sweeping vehicle at the time of the accident. However, Defendants failed to listen to the advice of the employees, disregarded and ignored the advice of employees, thus causing the death of Gary Bowens, Sr. PLAINTIFF will show that Defendants failed to provide for the safety and welfare of their employee Gary Bowens, Sr., and as a result, Gary Bowens, Sr. suffered the loss of his life in a tragic collision.

Dkt. No. 1-5 at 4-5 of 8.

Bowens alleges the following causes of action and legal theories against both

SCA and Tinnell:

### GROSS NEGLIGENCE

Defendants, SCA and Michael Tinnell's, act and omissions, as previously described, were committed with complete and reckless disregard for, and with willful wonton and actual conscious indifference to the rights, safety, and welfare of Decedents and the general public. The nature of Defendant's acts and omissions were of such a nature as to constitute gross negligence. Specifically, Defendant undertook a continuous course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose Decedent and others on the roadway to life threatening hazards. When viewed objectively from the standpoint of SCA and Michael Tinnell at the time of their occurrence, said acts and omissions involved an extreme degree of physical risk and danger, considering the probability and the magnitude of the potential harm to others. Defendants committed various acts and omissions constituting gross negligence as outlined above. Such gross negligence was a proximate cause of the occurrence the subject of this lawsuit which resulted in the death of

Plaintiff GARY BOWENS, SR.'s injuries and death.

### RESPONDEAT SUPERIOR

At all times relevant hereto, SCA had the right to control the physical details of the manner of performance of the conduct of its employees or agents so as to subject Roadhouse to vicarious liability for the torts of its employees or agents.

Alternatively, at all times relevant hereto, the acts of the employees of SCA were performed during their employment with SCA, to further their business and to accomplish the objective for which they were hired and were in the course and scope of employment or within the authority delegated to them so as to subject Roadhouse to vicarious liability for their tort.

### WRONGFUL DEATH STATUTES

This action is being brought pursuant to the Texas Survival Statute and the Texas Wrongful Death Statute over the death of Decedent Gary Bowens, Sr. the father of Gary Bowens, Jr.

As the surviving child of Gary Bowens, Sr., Deceased, Plaintiff Gary Bowens, Jr. is entitled to bring this action against Defendants for their wrongful acts, gross negligence, carelessness, unskillfulness, and/or default that caused the death of his father.

As a result, Plaintiff Gary Bowens, Jr. has suffered mental anguish, loss of companionship and society, and loss of inheritance.

In addition, Plaintiff Gary Bowens, Jr. is entitled to exemplary damages for Defendants' willful acts, omissions, and/or gross negligence that led to his father's death.

Dkt. No. 1-5 at 5-6 of 8.

As relief, Bowens "seeks compensation for the following damages":

a.    Past Pain and suffering;
b.    Past mental anguish;
c.    Past and future pecuniary and nonpecuniary wrongful death damages including the loss of inheritance, loss of care and affection, loss of support, loss of services, loss of advice, loss of counsel, loss of contributions of a pecuniary value;
d.    Cost of suit;
e.    Loss of consortium;
f.    Exemplary damages.

As discussed above, PLAINTIFF has suffered not only easily quantifiable economic damages, but also other forms of damages such as mental anguish and physical pain and will likely continue to suffer these damages in the future. PLAINTIFF is required by Texas law to

> state the maximum amount of damages sought. Pleading to the Court only, PLAINTIFF believes that when the totality of his damages is considered, along with the wrongful nature of Defendants' conduct, it is possible that a fact finder may ultimately decide that PLAINTIFF's damages exceed one million dollars ($1,000,000.00). PLAINTIFF reserves the right to seek more or less from the jury.

Dkt. No. 1-5 at 6-7 of 8. Bowens prays that "judgment be entered for the PLAINTIFF against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of suit; and such other and further relief to which the PLAINTIFF may be justly entitled at law or in equity." Dkt. No. 1-5 at 7-8 of 8.

The parties do not contest their respective citizenships: SCA is a citizen of Florida, and Bowens and Tinnell are both citizens of Texas. *See* Dkt. No. 1 at 5 of 7; Dkt. No. 9 at 1-2; Dkt. No. 10 at 5-6; Dkt. No. 13 at 6.

But SCA contends that Bowens "improperly joins Defendant Michael Tinnell to this action to block this court's jurisdiction based on diversity" and "that Tinnell is improperly joined because Plaintiff cannot recover on his gross negligence cause of action against Tinnell." Dkt. No. 1 at 3; Dkt. No. 10 at 4. And, in response to Bowens's Motion to Remand, SCA contends that "Tinnell is improperly joined because Plaintiff's Petition fails to contain enough facts to state a claim to relief that is plausible on its face. Said differently, Plaintiff cannot recover exemplary damages under a gross negligence theory against Tinnell." Dkt. No. 16 at 2.

-5-

## Legal Standards

I.     <u>General removal standards</u>

For a federal court to have jurisdiction over a state action based on diversity, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. §§ 1332(a); *Mitchell v. Bailey*, 982 F.3d 937, 942 (5th Cir. 2020), as revised (Dec. 30, 2020).

"Except as otherwise expressly provided by Act of Congress," a defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. 28 U.S.C. § 1441(a).

And, "[w]hen a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant 'is a citizen of the State in which such action is brought,' [28 U.S.C.] § 1441(b)." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

But "removal under [28 U.S.C.] § 1441(b)(2) is permissible only if complete diversity exists among all named parties: Each plaintiff must be diverse from each defendant, i.e., there must be what is known as complete diversity." *In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022) (cleaned up). And "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Id.* (cleaned up).

Due to the limited nature of the federal courts' jurisdiction, "[t]he burden of establishing subject matter jurisdiction in federal court rests on the party seeking to

invoke it." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (cleaned up). And, so, "[t]he party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013).

"As the party seeking removal, [a removing defendant] bear[s] the burden of proving both" complete diversity and that the amount in controversy satisfies the jurisdictional minimum. *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 85 (5th Cir. 2013).

And Congress has dictated that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

## II.   Improper joinder standards

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). Under the improper joinder doctrine, "federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant." *Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006).

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the

jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575.

A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Where there is no dispute or allegation of actual fraud concerning the fact that both plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, the plaintiff can establish a valid state-law cause of action against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

Under this second prong of the improper-joinder test, the standard is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant." *Smallwood*, 385 F.3d at 573. "A mere

theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* at 573 n.9 (cleaned up).

The Court conducts the "improper joinder analysis on the basis of claims in the state court complaint as it exists at the time of removal" and "will not entertain new theories not raised in state court." *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 301 (5th Cir. 2024) (cleaned up).

And the Fifth Circuit has clarified that the federal pleading standard, not a state pleading standard, applies when determining whether a nondiverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016). The Federal Rule of Civil Procedure "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

Under that standard, "[a] complaint must have contained enough facts to state a claim to relief that is plausible on its face." *Id.* at 200, 208 (cleaned up). And "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)

In making the improper-joinder determination, the Court will "evaluate all of

the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "any ambiguities of state law in the plaintiff's favor," and "then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (cleaned up); *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir. 1995) (cleaned up).

But the United States Court of Appeals for the Fifth Circuit has further instructed that, when examining the viability of the claims alleged in state court, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction." *Id.* at 575.

And, so, "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient," and, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.*; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow

-10-

the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit" and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper" and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

But this "common defense" or "equally dispositive" exception to the improper joinder rule "is implicated only when the common defense asserted would be equally dispositive as to *all* of the defendants." *McDonal*, 408 F.3d at 184 (emphasis in original). That is, "[i]f, but only if, the showing which forecloses [a plaintiff's] claims against the non-diverse defendants necessarily and equally compels foreclosure of all their claims against all the diverse defendants, then [this 'common defense' exception] applies and there was no improper joinder, meaning that the entire case should be remanded for want of subject matter jurisdiction." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005) (cleaned up).

But, if the Court "concludes that the common defense proffered would not dispose of every claim against every defendant," and the Court otherwise finds improper joinder of the non-diverse defendant, the Court "should continue to deny remand and proceed with the proper disposition of the case." *McDonal*, 408 F.3d at 184 (cleaned up).

Ordinarily, the court must conduct a Rule 12(b)(6)-type analysis by examining the allegations in the complaint to determine whether the plaintiff has stated a

claim against the non-diverse defendants. *See Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). But, if the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*

At the same time, the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the [non-diverse] defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

III.   <u>28 U.S.C. § 1445(c) standards</u>

28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

Section 1445(c)'s "statutory bar on removing state-law workers' compensation claims" creates a "substantive defect" or "procedural defect" with removal but not a

jurisdictional defect (that is, a defect that deprives the federal court of subject matter jurisdiction). *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 311-12 & n.9 (5th Cir. 2021), as revised (Feb. 26, 2021); *Milligan v. Home Depot USA, Inc.*, 809 F. App'x 217, 218 n.1 (5th Cir. 2020) (citing *Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 786 (5th Cir. 1993)); *Ernewayn v. Home Depot U.S.A., Inc.*, 727 F.3d 369, 371-72 (5th Cir. 2013). And this defect must be raised in a motion to remand filed within 30 days of removal, or it is waived. *See Williams*, 985 F.2d at 786-88.

But, once timely raised, "[a]s the removing party, [SCA] bears the burden of demonstrating that [Bowens's] claim does not 'arise under' the TWCA for the purposes of 28 U.S.C. § 1445(c)." *Wagner v. FedEx Freight, Inc.*, 315 F. Supp. 3d 916, 920 (N.D. Tex. 2018).

## Analysis

Because the improper joinder analysis determines the Court's subject matter jurisdiction, the Court turns first to determine if it has subject-matter jurisdiction based on diversity before, if necessary, considering whether Bowens's lawsuit was removable. *Accord Ernewayn*, 727 F.3d at 370.

SCA contends that Bowens improperly joined Tinnell as a defendant in state court because Bowens "cannot recover on his gross negligence cause of action against Tinnell." Dkt. No. 1 at 3; Dkt. No. 10 at 4.

SCA notes that Bowens "brings only a gross negligence cause of action against Tinnell for his acts and omissions as an Operations Support Manager" and that,

"[a]dditionally," Bowens "alleges that 'SCA had the right to control the physical details of the manner of performance of the conduct of its employees or agents so as to subject Roadhouse [sic] to vicarious liability for the torts of its employees or agents.'" Dkt. No. 1 at 4 (cleaned up); Dkt. No. 10 at 4 (cleaned up).

SCA argues that "[t]he Court does not need to look beyond Plaintiff's Original Petition to see that Plaintiff failed to allege sufficient facts to state a plausible claim for recovery against Tinnell" because, "[a]ssuming arguendo the truth of Plaintiff's allegations, Tinnell's acts and omissions in the course and scope of his duties as an employee of SCA render SCA vicariously liable." Dkt. No. 1 at 4; Dkt. No. 10 at 4. And, so, according to SCA, Bowens "could recover only from SCA. *See Chon Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (personal liability arises only when an employee owes a duty of reasonable care independent of the employer's duty)." Dkt. No. 1 at 4; Dkt. No. 10 at 4.

And, SCA contends, "[a]lthough not plead, SCA presumes that Plaintiff intends to hold SCA liable under his gross negligence theory on the basis that Tinnell was a vice principal of SCA and that his actions were in the course and scope of his duties, because an employer may only be held liable for exemplary damages for the actions of a vice-principal. *Bennett v Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010)." Dkt. No. 1 at 4; Dkt. No. 10 at 4-5. But, SCA adds, "a vice-principal is not personally liable for acts performed on behalf of the corporations. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)." Dkt. No. 1 at 4; Dkt. No. 10 at 5.

SCA concludes that, "notwithstanding Plaintiff's clear motive to defeat

diversity jurisdiction by adding a nondiverse employee of SCA, Plaintiff joinder of

Tinnell is improper because there is no possibility of recovery against Tinnell or any

other vice principal of SCA." Dkt. No. 1 at 4; Dkt. No. 10 at 5

Bowens responds that there was no improper joinder where,

[u]nder Texas law, a corporation can be held vicariously liable for the tortious acts of its employee when those acts are within the course and scope of employment. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d. 754, 757 (Tex. 2007). An employee may, however, be individually liable for his or her own negligence when he or she "owes an independent duty of reasonable care to the injured party apart from the employer's duty." *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Of course, liability cannot be imposed on employees who committed identical negligent acts or omissions. However, a corporate agent is personally liable for his own fraudulent or tortious acts. *In re Butt*, 495 S.W.3d 552, 562.
....

Moreover, federal district courts in Texas have decided cases like the current case before this Court. The Western District of Texas has noted in *Lyle v. 24 Hour Fitness, USA, Inc.* that the distinction has been clear with respect to whether a case should be remanded. There is "a single principle" which distinguishes many of these cases. In the cases in which remand was granted, the issue was whether the corporate agent played a personal role in creating the dangerous condition at issue, whereas in those in which remand was denied none of the managers were alleged to have had any personal role in creating the danger." *Lyle v. 24 Hour Fitness, USA, Inc.*, No. A-14-CA-300 LY, 2014 U.S. Dist. LEXIS 144279, 2014 WL 5094126, at *4 (W.D. Tex. Oct. 10, 2014).

In this case, Plaintiff is asserting that Defendant Michael Tinnell is personally liable for Michael Tinnell's direct involvement in creating a dangerous environment that led to the death of Gary Bowens, Sr. In Plaintiff's Original Petition, Plaintiff stated the following about Defendant Michael Tinnell:

"Mike Tinnell had ample and sufficient knowledge of the risks associated with Gary Bowens, Sr.'s operation of the vehicle that led to Gary Bowens, Sr.'s death and was advised by employees that Gary Bowens, Sr. should not have been operating the street sweeping vehicle at the time of the accident…Defendants failed to listen to the

advice of the employees, disregarded and ignored the advice of employees, thus causing the death of Gary Bowens, Sr."

This language in the pleading shows that Plaintiff is asserting that Michael Tinnell played a direct and personal role in creating the danger that led to the death of Gary Bowens, Sr. Michael Tinnell is not the CEO of SCA. Michael Tinnell does not oversee the high-level operations of SCA. Instead, Michael Tinnell's job description require him to have direct communication with, and directly supervise employees of SCA that are performing the street sweeping duties on the public roads and highways. This creates a fact issue for a jury as to whether Michael Tinnell owed and breached an individual duty of care to Gary Bowens, Sr.

....

If this court views this matter in the light most favorable to Plaintiff, and if this Court resolves all ambiguities in favor of Plaintiff, Defendant SCA has not met its heavy burden of proving an improper joinder. Plaintiff is able to establish a cause of action against Defendant Michael Tinnell. This court must, respectfully, remand this case to the state court.

Dkt. No. 13 at 6-9 (cleaned up).

And, Bowens adds, although, "[a]s a basis for its improper joinder assertion, Defendant SCA argues that Michael Tinnell functioned as a vice-principal for SCA, and that Plaintiff intends to hold Michael Tinnell responsible solely as a vice-principal for SCA," Bowens "makes no such assertion and Defendant's misguided assumption of Plaintiff's legal theory in this case should have no bearing on this Court's decision." Dkt. No. 13 at 9.

SCA replies that

[e]xemplary damages can be awarded when the factfinder determines that a defendant's conduct is grossly negligent. TEX. CIV. PRAC. & REM. CODE § 41.001(5) Exemplary damages are designed to penalize a defendant for outrageous, malicious, or otherwise morally culpable conduct and to deter such conduct in the future. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230 (Tex. 2019).

Gross negligence requires clear and convincing evidence that (1) an act or omission, when viewed objectively from the defendant's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. CODE §§ 41.001(11)(B), 41.001(7).

Here, Plaintiff improperly joins Tinnell because there is no possibility of recovery by Plaintiff on his gross negligence cause of action against Tinnell. First, the Petition contains no factual allegations that would allow for recovery under a gross negligence theory against Tinnell. Second, Texas Law does not allow recovery of exemplary damages against an employee-manager for managerial duties in this context.

Plaintiff's Petition alleges that "SCA and Tinnell had ample and sufficient knowledge of the risks" associated with Bowens' operation of the vehicle, and, thus, he "should not have been operating" the vehicle. (Doc. 1, Ex. B, pg. 3). However, whatever this "knowledge" of a risk, danger, or potential harm is not stated or explained within the Petition. There is little else to understand what conduct serves as the basis for punitive damages and to be deterred from in the future. Even under Texas' fair notice pleading standard Plaintiff's allegations are insufficient, and certainly do not satisfy the heightened federal pleading standards.

Specifically, Plaintiff's legal allegations that Tinnell's acts and omissions constitute gross negligence are insufficient, and, further, are not supported by factual allegations. There are no set of facts or inferences that could be made from the factual allegations via the Petition that would satisfy the two elements of gross negligence – that Tinnell's actions or omissions involved an extreme degree of risk, nor that Tinnell knew the risks but nevertheless proceeded with conscious indifference. Said differently, there are no factual allegations that establish Tinnell's "outrageous, malicious, or otherwise morally culpable conduct."

Next, Plaintiff alleges Tinnell "serves as an Operations Support Manager," who is "designated as [SCA's] agent...for the management and safety of the employees." (Doc. 13, Ex. B, Pg. 2,4). Plaintiff continues that "SCA had the right to control the physical details of the manner of performance of the conduct of its employees or agents so as to subject Roadhouse [sic] to vicarious liability for the torts of its employees or agents." *Id.* at 4. Additionally, Plaintiff alleges that the "acts of the employees of SCA...were in course and scope of [their] employment with SCA or within the authority delegated to them." *Id.*

Taking Plaintiff's allegations as true, Tinnell's acts and omissions were in the course and scope of his duties as an employee of SCA. There are no legal or factual allegations against Tinnell that establish an independent duty beyond those duties entrusted to him from SCA and performed in the course and scope of his employment with SCA. *See Chon Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (personal liability arises only when an employee owes a duty of reasonable care independent of the employer's duty).

Plaintiff argues in his Motion for Remand that it asserted a claim against Tinnell based on his direct involvement and quotes the Petition, but leaves out the beginning of that sentence omitting critical information: "Defendants, SCA and Mike Tinnell had ample…"(Doc. 13, Pg. 8) compare (Doc. 1, Ex. B, Pg. 3). On the contrary, the Petition does not contain any factual allegation directly against Tinnell that is not also alleged against SCA. Plaintiff's gross negligence allegations against SCA and Tinnell are one and the same. Plaintiff's petition contains no information that Tinnell owed a duty beyond that of his employer SCA.

Lastly, Defendants agree with Plaintiff that *Lyle* is persuasive. *Lyle v. 24 Hour Fitness, USA, Inc.*, A-14-CA-300 LY, 2014 WL 5094126 (W.D. Tex. Oct. 10, 2014). *Lyle* was decided before the Fifth Circuit clarified that *Smallwood* analysis requires use of the federal pleading standard rather than a state standard. *Intl. Energy*, 818 F.3d at 200. In *Lyle*, Plaintiff sued 24 Hour Fitness and its manager following a slip and fall injury. *Lyle*, 2014 WL 5094126 at *1. Magistrate Judge Andrew W. Austin reasoned that the petition failed to show any personal involvement by the manager and, therefore, there was no reasonable basis for the district court to predict that Plaintiff could recover against the manager. *Id.* at *5. Judge Austin found that the manager was improperly joined and his recommendation to deny Plaintiff's motion to remand was adopted. *Id.* at 6.

Accordingly, notwithstanding Plaintiff's clear motive to defeat diversity jurisdiction by adding a nondiverse employee of SCA, Plaintiff's joinder of Tinnell is improper because there is no possibility of recovery against Tinnell.

Dkt. No. 16 at 5-8 (cleaned up).

As SCA acknowledges, Bowens's "gross negligence allegations against SCA and Tinnell are one and the same." *Id.* at 7. Insofar as SCA contends that Bowens failed to allege sufficient facts to state a plausible claim for recovery against Tinnell

insofar as "[t]here are no set of facts or inferences that could be made from the factual allegations via [Bowens's] Petition that would satisfy the two elements of gross negligence – that Tinnell's actions or omissions involved an extreme degree of risk, nor that Tinnell knew the risks but nevertheless proceeded with conscious indifference" – that alleged deficiency, if accepted, would apply equally to Bowens's claim against SCA. And, so, this "common defense" would be equally dispositive as to both defendants.

As to another basis that SCA raised for finding improper joinder, Bowens denies alleging that Tinnell functioned as a vice-principal for SCA or seeking to hold Tinnell responsible solely as SCA's vice-principal, for whose actions SCA might be held liable for exemplary damages. *See* Dkt. No. 13 at 9. And SCA acknowledged from the beginning that Bowens did not plead a vice-principal liability theory and later dropped its vice-principal argument in responding to Bowens's Motion to Remand. *See* Dkt. No. 1 at 4; Dkt. No. 10 at 4; Dkt. No. 16.

But SCA also raises arguments for improper joinder that are specific to Tinnell and based on what Bowens pleaded in state court. Bowens does assert that SCA should be held vicariously liable for Tinnell's tortious acts within the course and scope of his employment and also that Tinnell should be individually liable for his own negligence where he owed an independent duty of reasonable care to Gary Bowens, Sr. apart from the employer's duty. And, so, in support of asserting improper joinder, SCA argued that:

(1)      as alleged, Tinnell's liability is based on alleged acts and omissions that

were in the course and scope of his duties as an employee of SCA and that, assuming the truth of those allegations, Tinnell's acts and omissions in the course and scope of his duties as an employee would render SCA vicariously liable but Bowens could recover only from SCA, and

(2)   Bowens made no legal or factual allegations against Tinnell that establish an independent duty beyond those duties entrusted to him from SCA and performed in the course and scope of his employment with SCA, as required to hold Tinnell personally liable.

As to Bowens's allegations of vicarious liability, absent allegations that Tinnell could be held vicariously liable for SCA's action, there is no reasonable basis to predict Bowens's recovery against Tinnell individually on the basis of Bowens's vicarious liability or respondeat superior theory. And Bowens has "not alleged that [SCA] was an agent of [Tinnell] acting in the scope of the authority granted by [Tinnell]." *Davis v. State Farm Lloyds*, No. 3:15-cv-596-B, 2015 WL 4475860, at *6-*7 (N.D. Tex. July 21, 2015).

The analysis turns, then, on whether Plaintiff's Original Petition affords the Court a reasonable basis to predict that Bowens might be able to recover against Tinnell based on a duty that Tinnell owed to Gary Bowens, Sr., independent of duties running between SCA and Gary Bowens, Sr., or whether, instead, Bowens's state-court allegations against Tinnell raise, at most, only a theoretical possibility of recovery.

Other Texas federal courts have addressed this question in the improper-joinder context and have persuasively explained that "Texas law is clear that a corporate manager or agent can only be personally liable if he or she owes the plaintiff an independent duty of care *apart* from the duty owed by the employer."

*Land v. Wal-Mart Stores of Tex., LLC*, No. SA-14-CV-009-XR, 2014 WL 585408, at *2 (W.D. Tex. Feb. 13, 2014) (emphasis in original; citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.")). And, "[i]n 2005, the Texas Supreme Court extended Leitch to premises liability claims." *Id.* (citing *Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005)).

And, since that time, "numerous federal district courts have applied *Leitch* and *Tri* to find improper joinder when a corporate defendant is joined with a store manager" but have done so in cases in which the store manager was "not alleged to have played any personal role in creating the dangerous condition." *Id.* (cleaned up); *accord Burney v. Costco Wholesale Corp.*, No. 4:23-CV-94-SDJ-AGD, 2024 WL 1283711, at *1 (E.D. Tex. Mar. 26, 2024) (collecting cases).

"It is a long standing rule in Texas that 'a corporate agent is personally liable for his own fraudulent or tortious acts,'" and "[t]here is no reason to believe that *Tri* changed that principle and that employees are somehow immunized for their own torts if they were acting in the scope of their employment." *Land*, 2014 WL 585408, at *3 (quoting *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002)); *accord Burney*, 2024 WL 1283711, at *2 ("As a result, and as this Court has previously held, Texas law does not support a blanket rule that an employee cannot be sued for any direct act of negligence causing injury when the employee is acting within the scope of his employment." (collecting cases)); *Lopez-Monroy v. Wal-Mart Stores Tex., LLC*, No. 3:19-CV-00051, 2019 WL 3302615, at *5 (S.D. Tex. July 23, 2019) ("There is nothing

in the *Leitch* or *Tri* opinions that remotely suggests that the Texas Supreme Court intended to alter the general rule that an employee may be held individually liable for tortious conduct in which he participates during the course of employment, provided he owed a duty of care separate from his employer's duty."), *rep. & rec. adopted*, 2019 WL 3753702 (S.D. Tex. Aug. 8, 2019).

"An employee may face individual liability where he 'directs or participates in a tortious act during his employment' or 'personally creates a dangerous situation that causes injury.'" *Summers v. Lowe's Home Centers, LLC*, No. SA-23-CA-00406-XR, 2023 WL 3534392, at *4 (W.D. Tex. May 17, 2023) (quoting *In re Butt*, 495 S.W.3d 455, 466 (Tex. App. – Corpus Christi-Edinburg 2016, orig. proceeding)); *accord Burney*, 2024 WL 1283711, at *2 (collecting cases).

And, following *Leitch* and *Tri*, "other federal district courts in this state have remanded cases in which the plaintiff has asserted negligence claims against both the corporate employer and the employee who actually participated in the alleged tort." *Land*, 2014 WL 585408, at *3 (collecting cases). That is, "[i]n cases where courts have held a store manager or employee to be potentially liable, the plaintiffs alleged the employee was directly involved in the conduct that caused the plaintiff's injuries." *Paez v. Fam. Dollar Stores of Tex., LLC*, No. A-22-CV-52-RP, 2022 WL 17814228, at *3 (W.D. Tex. July 7, 2022) (collecting cases), *rep. & rec. adopted*, 2022 WL 17813783 (W.D. Tex. July 26, 2022).

On the other hand, "federal courts have understandably been unwilling to find that a plaintiff has a reasonable basis for recovery against a store manager or

employee who did not directly create the danger that led to the plaintiff's injuries." *Lopez-Monroy*, 2019 WL 3302615, at *4 (collecting cases). And, so, "where the employee was merely indirectly involved, or the plaintiff did not allege active involvement, courts have held plaintiffs could not recover from the employee." *Paez*, 2022 WL 17814228, at *4 (collecting cases).

In sum, "[i]n all of the cases in which remand was granted, the courts pointed to the fact that the pleadings alleged the store manager or agent played a personal role in creating the dangerous condition at issue, whereas in those in which remand was denied none of the managers were alleged to have had any personal role in creating the danger." *Molina v. Wal-Mart Stores, Tex., LLC*, No. SA-18-CA-1273-XR, 2019 WL 410392, at *3 (W.D. Tex. Feb. 1, 2019) (quoting *Lyle*, 2014 WL 5094126, at *3).

Here, Bowens alleges that

- "Defendant, MIKE TINNELL, is an individual who serves as an Operations Support Manager at SCA and is designated as its agent to be responsible for the management and safety of the employees at SCA."
- "Plaintiff will show that Defendants, SCA and MIKE TINNELL had ample and sufficient knowledge of the risks associated with Gary Bowens, Sr.'s operation of the vehicle that led to Gary Bowens, Sr.'s death and was advised by employees that Gary Bowens, Sr. should not have been operating the street sweeping vehicle at the time of the accident."
- "However, Defendants failed to listen to the advice of the employees, disregarded and ignored the advice of employees, thus causing the death of Gary Bowens, Sr. PLAINTIFF will show that Defendants failed to provide for the safety and welfare of their employee Gary Bowens, Sr., and as a result, Gary Bowens, Sr. suffered the loss of his life in a tragic collision."

-23-

Dkt. No. 1-5 at 3-4 of 8.

Bowens's allegations may not fall neatly within the dichotomy laid out above.

But the Court cannot accept SCA's argument that these allegations, under the governing law outlined above, contain no information that Tinnell owed a duty beyond that of his employer SCA only because there is no factual allegation directly against Tinnell that is not also alleged against SCA. After all, SCA and Bowens both acknowledge that Bowens alleges vicarious liability against SCA for Tinnell's acts or omissions.

And the Court must evaluate all of the factual allegations in Plaintiff's Original Petition in the light most favorable to Bowens, resolving all contested issues of substantive fact and any ambiguities of state law in Bowens's favor, and then examine relevant state law and resolve all uncertainties in Bowens's favor. *Davidson*, 819 F.3d at 765.

In doing so, the Court finds that SCA has not met its heavy burden to demonstrate that here is no reasonable basis to predict that Bowen might be able to recover against Tinnell under Texas law.

Bowens's allegations, evaluated in the light most favorable to him, allege more involvement in creating the dangerous condition at issue than being, for example, a store manager who is generally responsible for the safety of those on the employer's premises. Bowens alleges that Tinnell "had ample and sufficient knowledge of the risks associated with Gary Bowens, Sr.'s operation of the vehicle that led to Gary Bowens, Sr.'s death," "was advised by employees that Gary Bowens, Sr. should not

have been operating the street sweeping vehicle at the time of the accident," and "failed to listen to the advice of the employees [and] disregarded and ignored the advice of employees." Although Bowens does not allege that Tinnell was present at the scene of the accident, Bowens has alleged facts regarding how Tinnell "was involved in, or might have been responsible for, the accident." *Lyle*, 2014 WL 5094126, at *4.

Resolving any ambiguities in Texas law on this score in Bowens's favor, Bowens has alleged a level of personal involvement in the creating the dangerous conditions beyond those that led other courts to find improper joinder. *See, e.g.*, *Molina*, 2019 WL 410392, at *4-*5; *cf. Smith v. US Foods, Inc.*, No. 3:17-cv-3350-L, 2018 WL 3869570, at *5 (N.D. Tex. Aug. 15, 2018). "At a bare minimum, it is far from certain that [Bowens] would be precluded from recovering monetary damages against [Tinnell]. To the extent there is any uncertainty whatsoever, this Court must tip the scales in favor of remand." *Lopez-Monroy*, 2019 WL 3302615, at *5 (cleaned up).

Because Bowens alleged that Tinnell "personally and directly participated in the events that caused [Gary Bowens, Sr.'s death], under controlling Texas precedent the Court cannot say with certainty that 'there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.'" *Burney*, 2024 WL 1283711, at *2 (cleaned up; quoting *Cavallini*, 44 F.3d at 259).

And, so, SCA has failed to demonstrate that Tinnell was improperly joined as

-25-

a defendant in state court. Because Bowens is a Texas citizen and Tinnell is a Texas citizen, complete diversity between the parties does not exist, leaving the Court without subject matter jurisdiction.

This case, then, must be remanded to state court. And the Court need not address Bowens's assertion that the case is nonremovable under 28 U.S.C. § 1445(c).

But the Court denies Bowens's request for an award of fees and expenses under 28 U.S.C. § 1447(c).

"When a case is remanded, the court may order the removing party to pay 'just costs and any actual expenses, including attorney's fees, incurred as a result of the removal.' 28 U.S.C. § 1447(c)." *Burney*, 2024 WL 1283711, at *1. "The Supreme Court has clarified that, absent unusual circumstances, courts may award attorney's fees under Section 1447(c) 'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Id.* (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)). "This inquiry should take into consideration 'the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.'" *Id.* (quoting *Martin*, 546 U.S. at 140).

As another judge in this circuit recently concluded under similar circumstances, SCA's "position on this issue of Texas tort law, while ultimately a mistaken reading of applicable precedent, is not unreasonable and cannot support an award of attorney fees." *Id.* at *2.

-26-

## Conclusion

The Court GRANTS Plaintiff Gary Bowens, Jr.'s Motion to Remand [Dkt. No. 13] and remands this case to the 101st District Court, Dallas County, Texas, from which it was removed, but DENIES Plaintiff's request for attorneys' fees and costs.

The Clerk of the Court is directed to immediately transmit this case to the 101st District Court of Dallas County, Texas.

SO ORDERED.

DATED: July 2, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE